USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Shae Petersen,

                **Plaintiff,**

-against-

Diesel Power Gear LLC et al.,

                **Defendants.**

1:21-cv-08827 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Shae Petersen ("Plaintiff" or "Petersen"), known professionally as "SRIL," is an artist who creates murals on building walls, including commissioned murals for clients such as the Utah Jazz, Patagonia, BYU and Reddit. (*See* Compl., ECF No. 1, ¶ 12.) This action arises from a copyrighted mural created by Petersen, a copy of which was used online by Diesel Power Gear, LLC ("Diesel"), without Petersen's permission. (*See id*. ¶¶ 13-18.) Petersen brought this action, alleging that Diesel and three of its principals, David Sparks ("Sparks"), David Kiley ("Kiley") and Josh Stuart ("Stuart")[1] directly infringed on Petersen's copyright in the mural; that Sparks, Kiley and Stuart are vicariously and contributorily liable for Diesel's infringement; and that Defendants violated the Digital Millennium Copyright Act ("DMCA") by intentionally removing information identifying Petersen as the author of the work. (*See id*. ¶¶ 22-39.)

Before the Court is Petersen's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking partial summary judgment as to Defendants' liability for copyright infringement and for violation of the DMCA, as well as a finding that Defendants' conduct was willful. (Pl.'s Mot. for Part. Summ. J., ECF No. 47; Pl.'s Proposed Order, ECF No. 47-1.) Petersen

---

[1] Sparks, Kiley and Stuart collectively are referred to herein as the "Individual Defendants." The Individual Defendants, along with Diesel, collectively are referred to herein as the "Defendants."

thus seeks to have the action proceed to trial only on the issue of damages. (*See* Pl.'s Proposed Order ¶ D.) For the reasons set forth below, Petersen's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. Undisputed Facts

Petersen created an original mural, entitled "Godlike" (the "Subject Mural"), using the author identification information "SRILART." (*See* Defs.' 56.1 Response, ECF No. 63 at pp. 1-11, ¶¶ 1-2.) Petersen registered the Subject Mural with the United States Copyright Office, receiving an approved registration dated August 31, 2016 and numbered VA 2-060-694. (*See id*. ¶ 2.) At all relevant times, Petersen owned all copyrights in and to the Subject Mural. (*Id*.)

At all relevant times, Diesel's core business model was monthly truck giveaways. (*See* Defs.' Stmt. Of Add. Undisputed Facts[2] ¶ 2.) Each month, Diesel built a custom truck and promoted a giveaway for the truck. (*See id.*) Each $5 spent on Diesel's website for diesel-truck-related apparel or other diesel-truck items gave the purchaser an entry to win the truck in a raffle-type drawing. (*See id*.) Diesel promoted these truck giveaways on social media and other platforms. (*See id*.)

On at least two occasions (*i.e.*, in 2017 and 2020, as discussed further below), Diesel photographed a portion of the Subject Mural as a backdrop for a truck, and the resulting photograph was used for social media posts on Instagram and Facebook. (*See* Defs.' 56.1 Response

---

[2] Pursuant to Local Civil Rule 56.1, a party opposing a motion for summary judgment may include with its opposition papers "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." S. & E.D.N.Y. L. Civ. R. 56.1(b). Defendants included with their opposition papers a Statement of Additional Undisputed Facts ("SAUF") (Defs.' SAUF, ECF No. 63 at pp. 11-15), but Plaintiff failed to respond to such statement. As such, each numbered paragraph contained in Defendants' SAUF is "deemed to be admitted for purposes of the motion." *See* S. & E.D.N.Y. L. Civ. R. 56.1(c).

¶ 3; Burroughs Decl., Ex. 4, ECF No. 48-1; *id.*, Ex. 6, ECF No. 48-3.) At all relevant times, Sparks, Kiley and Stuart were part owners of Diesel. (*See* Defs.' 56.1 Response ¶ 3.)

The employees who created and posted promotional content had significant autonomy. (Defs.' SAUF ¶ 6.) Although, as owners, Sparks, Kiley and Stuart had the right to supervise these employees, very few posts were reviewed or approved by Sparks, Kiley and/or Stuart because they were engaged in other aspects of Diesel's business. (*Id*. ¶¶ 5-6.)

On or around March 25, 2017, Diesel's photographer took a picture of a Diesel giveaway truck using a part of the Subject Mural as a backdrop. (Defs.' SAUF ¶ 7.) The photograph taken by Diesel's photographer did not include the word "SRILART," which appeared in the upper right corner of the Subject Mural. (*Id*. ¶ 8.) Instead, the backdrop of the photograph was only a small section near the center of the Subject Mural. (*Id*. ¶ 9.) Shortly thereafter, Diesel's social media employee posted the image as part of an Instagram or Facebook post for the then-current Diesel truck giveaway (the "2017 Post"). (*Id*. ¶ 10.)

Petersen became aware of the 2017 Post and reached out to Diesel to notify Diesel that it was not authorized to use the Subject Mural. (Defs.' SAUF ¶ 11.) Diesel immediately—within hours of posting—took down the 2017 Post. (*Id*. ¶ 12.) At this time, Sparks informed all Diesel employees that they should not use the Subject Mural in Diesel's promotional images. (*Id*. ¶ 13.) Between 2017 and 2020, Diesel had significant employee turnover, including but not limited to its photographer and social media employees. (*Id*. ¶ 14.)

As of June 2020, a new employee, Alec Black ("Black"), was Diesel's photographer. (Defs.' SAUF ¶ 15.) On or around June 28, 2020, Black was driving around the Salt Lake City area looking for a good photo backdrop for the then-current Diesel giveaway truck. (*Id*. ¶ 16.) Black saw the

Subject Mural and decided to use part of it as the backdrop for a photograph of the then-current Diesel giveaway truck. (*Id*. ¶ 17.) Black took a photograph of the then-current giveaway truck in front of part of the Subject Mural around late morning and posted it in an Instagram post around an hour later (the "2020 Post"). (*Id*. ¶ 18.)

The photograph contained in the 2020 Post did not include the word "SRILART," which appears in the upper right corner of the Subject Mural. (Defs.' SAUF ¶ 19.) Instead, the photo backdrop was only a small section near the center of the Subject Mural. (*Id*. ¶ 20.) Petersen reached out to Sparks regarding use of the Subject Mural in the 2020 Post. (*Id*. ¶ 22.). Sparks immediately communicated the situation to Black, who responded by removing the 2020 Post within a few hours of when it was posted. (*Id*. ¶ 23.) Each year, Diesel uses over 700 social media posts as part of its efforts to promote truck giveaways. (*Id*. ¶ 24.)

## II.   Procedural History

On October 28, 2021, Petersen commenced this action asserting claims for copyright infringement; vicarious and contributory copyright infringement; and violations of the DMCA. (*See* Compl.) On February 14, 2022, Defendants filed their Answer. (*See* Answer, ECF No. 13.)

On October 21, 2022, Petersen filed the motion for summary judgment that is now before the Court. (*See* Pl.'s Mot. for Part. Summ. J.) On November 23, 2022, Defendants filed their opposition to Petersen's motion. (*See* Defs.' Opp. Mem., ECF No. 62.). On December 7, 2022, Plaintiff filed his reply. (*See* Pl.'s Reply, ECF No. 64.)

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." *Id*. at 553 (quoting *Anderson*, 477 U.S. at 252). "Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party." *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, No. 15-CV-04244 (JGK), 2018 WL 4489278, at *2 (S.D.N.Y. Sept. 19, 2018) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

## ANALYSIS

In his motion for summary judgment, Plaintiff seeks judgment on the liability of all Defendants for direct copyright infringement and the liability of the Individual Defendants for vicarious and contributory copyright infringement. (Pl.'s Mem. at 5-14.) He also seeks a finding that the Defendants' infringement was willful. (Id. at 17-19.) In addition, Plaintiff seeks judgment on the liability of all Defendants for violations of the DMCA. (*Id*. at 14-16.)

I. **Copyright Infringement**

   A. **Direct Infringement**

The Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. §§ 101-803, grants copyright owners a bundle of exclusive rights, including the rights "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." *Id*. § 106. Plaintiffs must prove the following elements for an infringement claim: (1) they hold a valid ownership interest in the relevant copyrights, (2) defendants have "actually copied" their works, and (3) defendants' "copying is illegal" because of a "substantial similarity" between defendants' works and the "protectable elements" of their copyrighted works. *See Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 744 (S.D.N.Y. 2017) (citing *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc*., 150 F.3d 132, 137 (2d Cir. 1998)). For a derivative work claim, "plaintiffs must further prove that (4) defendants' works are unauthorized derivatives under 17 U.S.C. § 106(2)." *See id.*

Plaintiff has established liability for direct copyright infringement by Diesel, as Diesel itself admits. (*See* Defs.' Opp. Mem. at 2 ("Diesel Power Gear does not dispute that using a part of the Mural as a backdrop for the 2017 Post and for the 2020 Post constitutes copyright infringement.").) Plaintiff also moves for summary judgment on the issue of the Individual Defendants' liability for direct infringement. The Individual Defendants "can be held liable for the infringing acts of [Diesel] if they personally participated in the acts constituting infringement." *See Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03-CV-05664 (JGK), 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005). However, there is a material dispute of fact as to whether the Individual Defendants personally participated in the infringement and/or whether they personally engaged in acts of infringement. None of the Individual Defendants took the photographs used for the 2017 Post or

the 2020 Post. (*See* Defs.' SAUF ¶¶ 7, 18.) Moreover, Defendants dispute, with citation to admissible evidence, Plaintiff's statements that Stuart "exploited the Subject Mural as part of an online display," and that "Sparks and Kiley also published the Subject Mural online."[3] (*See* Defs.' 56.1 Response ¶¶ 4-5.) Thus, the issue of whether the Individual Defendants directly infringed Plaintiff's copyright must be reserved for trial.

B. **Vicarious Liability**

Plaintiff moves for summary judgment on the issue of whether the Individual Defendants are vicariously liable for copyright infringement. (Pl.'s Mem. at 13.) To be vicariously liable for copyright infringement, the defendant must have the right and ability to supervise the infringing act and a direct financial interest in the infringing activity. *See Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Although the Individual Defendants had the ability to supervise the employees who engaged in the infringing activities (*see* Defs.' SAUF ¶ 5), the second element of a vicarious infringement claim is lacking. The second element requires a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). There is no undisputed record evidence regarding any direct financial benefit received by the Individual Defendants from Diesel's infringing activities.[4] Thus, this aspect of Plaintiff's summary judgment motion also must be denied.

---

[3] The Court finds that the record is unclear as to the facts regarding the Individual Defendants' allegedly infringing actions such that summary judgment properly cannot be granted against them.

[4] In his Reply, Plaintiff argues that the Individual Defendants received financial benefits from acts of Diesel's brand ambassadors (Pl. Reply at 4-6), but does not show through undisputed facts a causal relationship between the infringing activities and such financial benefits.

### C.  Contributory Infringement

Defendants move for summary judgment regarding the Individual Defendants' liability as contributory infringers. (Pl.'s Mem. at 13-14.) To be liable for contributory infringement, the Individual Defendants must have had knowledge of the underlying direct infringement and engaged in personal conduct that induced, caused or materially contributed to the infringing conduct. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117-18 (2d Cir. 2010) (citations omitted). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Id*. Willful blindness is not an excuse, and is sufficient to satisfy the knowledge requirement. *Id.* at 118. The Individual Defendants' participation or contribution to the infringement must be substantial. *See Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 155 (S.D.N.Y. 2009).

Many of the issues relevant to contributory liability are discussed in other parts of this opinion. Therefore, summary judgment on the Individual Defendants' liability for contributory infringement is denied on similar grounds as their liability for direct and vicarious infringement. Based upon the Court's careful review of the summary judgment record, there are material issues of fact regarding whether the Individual Defendants engaged in conduct that encouraged or assisted the infringement.

### D. Willfulness

Plaintiff moves for a summary determination that Defendants' infringement was willful. (Pl.'s Mem. at 17-19.) Because, as set forth above, the Court has not found the Individual Defendants liable for infringement, the Court need not consider at this time whether the conduct

of the Individual Defendants was willful, but only must consider whether Diesel's conduct was willful.

To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (citations omitted). On the record before the Court, there are material fact issues regarding Diesel's willfulness. Plaintiff has not proffered undisputed evidence that Diesel was aware at the time photographs first were taken of the Subject Mural and placed on social media that the social media posts constituted infringement. Once Diesel became aware of the infringement, Diesel contends that it took down the offending social media posts within hours of them being posted (*see* Pl.'s SAUF ¶¶ 12, 23), which would indicate a lack of willfulness. The Court finds that the issue of Diesel's willfulness must be resolved at trial.

II. **DMCA**

Finally, Plaintiff moves for summary judgment on the claim that Defendants violated the DMCA. (Pl.'s Mem. at 14-16.) Plaintiff alleges Defendants violated Section 1202(b)(1) of the DMCA, which provides that no person shall "intentionally remove or alter any copyright information." 17 U.S.C. § 1202(b)(1). To be found liable, the defendant must know or have reasonable grounds to know that "it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). Copyright Management Information ("CMI") includes "the name of, and other identifying information about, the author of a work." 17 U.S.C. § 1202(c)(2). To prevail on a claim alleging a violation of Section 1202(b), a plaintiff must show "(1) the existence of CMI on the [work at issue];

10

(2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 608 (S.D.N.Y. 2018) (citing *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)).

In the present case, the question of whether Defendants had the requisite intent to remove the CMI is one that the Court is unable to ascertain from the record, given Defendants' contention that only a portion of the Subject Mural was used as a backdrop for a photograph.[5] Therefore, a judgment on whether Defendants had the intent required for a DMCA violation is inappropriate at this stage of the case.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED with respect to Diesel's liability for copyright infringement and DENIED in all other respects. The parties are directed to appear for a telephone conference on January 5, 2023, at 11:30 a.m. EST to address any open damages-related discovery issues (*e.g.*, Def.'s Ltr. Mot., ECF No. 56) and to set a schedule for pre-trial submissions. At the scheduled time, the parties shall each separately call (888) 278-0296 (or (214) 765-0479) and enter access code 6489745.

**SO ORDERED.**

---

[5] The Court need not, and does not, now decide whether the CMI should be considered as having been removed or altered in circumstances where Defendants contend that they merely took photographs of the Subject Mural, not including the CMI. *See Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018) ("The Court cannot find, and Plaintiff has not pointed to, any case standing for the proposition that failure to include copyright management information—merely by the framing of the scene, rather than by any editing or cropping—constitutes removal or alteration."); *but see Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019) (finding DMCA liability where CMI was "altered and missing"), *aff'd*, 970 F.3d 167 (2d Cir. 2020).

Dated: New York, New York
December 21, 2022

_____
STEWART D. AARON
United States Magistrate Judge